WHITNEY v. OLSON DRILLING CO.

No. 33725. May 23, 1950.

*218 P. 2d 899.*

Sam Y. Colby, of Madill, and Champion, Fischl & Champion, of Ardmore, for plaintiff in error.

Monnet, Hayes & Brown, of Oklahoma City, for defendant in error.

O'NEAL, J. This is an appeal by plaintiff below from an order of the district court of Marshall county, Okla., overruling his motion for a new trial.

Plaintiff filed two actions in the trial court; one for the wrongful death of James Bennett, and one for conscious pain and suffering of decedent between the date of his injury and the date of his death. The two cases were consolidated and tried together.

At the close of plaintiff's evidence, defendant demurred thereto and the court overruled the demurrer. Thereupon defendant presented its evidence and at the close thereof plaintiff announced that he had no evidence to present in rebuttal. Defendant then moved the court to direct a verdict for defendant. The motion was sustained and the court prepared a verdict for defendant and directed one of the members of the jury to sign it as foreman. Exceptions to these rulings were saved by plaintiff and over his objections the verdict was accepted and filed. Judgment was entered accordingly and after unsuccessful motion for new trial, plaintiff appeals.

There are fifteen assignments of alleged error submitted under one general proposition that the court erred in sustaining defendant's motion for a directed verdict, in directing the jury to return the verdict in favor of the defendant and in rendering judgment in favor of defendant upon the directed verdict.

This calls for a brief statement of the issues and an examination of all the evidence. The amended petition in each case alleged that, on or about December 1, 1945, plaintiff's decedent, James Bennett, was employed by defendant, Olson Drilling Company, a corporation, engaged in the business of drilling wells for the production of oil and gas, as driller's helper and water pumper; that a part of his duties was to pump water to be used at a number of drilling rigs then being operated by defendant in Marshall county, and particularly for a drilling rig then being operated at a location known as "Little 100 Well No. 7"; that a part of decedent's duties was to keep the water lines in repair running from the source of supply to and into the tanks at the various drilling locations. Amended petitions further alleged that on or about December 1, 1945, while decedent, James Bennett, was engaged in the repair of the water line running to said drilling rig, and while so engaged and in the exercise of due care and caution on his part, said James Bennett stuck a "wicker" or splinter of metal in his right thumb; that as a result thereof decedent developed an infection, or blood poisoning, known as septicemia, from, and as a result of which, said James Bennett died on December 21, 1945. There were appropriate allegations as to the decedent's earnings, his age, his life expectancy, his widow and two minor children. The amended petition in the second action also alleged pain and suffering of decedent between the date of his injury and the date of his death, and the said petition alleged the amount of hospital bills, doctor's bills, funeral expenses, etc. As to all these matters there is no controversy. The allegations in both petitions as to the grounds relied upon for recovery against the defendant were:

". . . that the said defendant has carelessly and negligently failed and neglected to furnish to the said James Bennett, the proper tools and safe guards and gloves to work with to protect his hands, fingers, thumb and person from injury and because of such carelessness and negligence the said James Bennett received said injury at said time and place and on said date as hereinbefore set forth. That the said

plaintiff further alleges that the said defendant has carelessly and negligently failed and neglected to furnish to the said James Bennett the proper wrenches, threaders, and other tools, and also failed to furnish the said James Bennett with the proper material to work with, and failed and neglected to furnish the said James Bennett with new pipe or pipe that had been reconditioned, but, on the other hand, had the said James Bennett . . . . working with a water line and pipe that was rusty and deteriorated and which was dangerous to work with and to repair, and that the said defendant had failed to furnish and supply a water line or pipe for the same that was in proper condition, and new pipe or pipe that had been treated or repaired, but through their negligence, furnished the deceased with rusty and deteriorated pipe which was dangerous for the deceased to work with and to repair, and pipe that was in danger of injuring his hands, fingers, and thumbs, because of the deteriorated condition of said material and water pipe."

Answer was by general denial and that the injuries sustained by plaintiff's decedent, if any, were caused solely by the negligence and want of care upon the part of deceased; that defendant was not in any way negligent, and a plea of contributory negligence.

The order of the court sustaining the motion of defendant for a directed verdict does not state specifically the grounds upon which the court sustained the motion. The motion itself is not set forth in the record, but the judgment of the court states:

" . . . At this time defendant interposes its motion for a directed verdict in its behalf in each case upon the ground that all of the evidence introduced by and in behalf of plaintiff is wholly insufficient to establish a cause of action in favor of plaintiff and against the defendant."

Bearing in mind the allegations of the alleged negligence of defendant, the sole question is whether there was sufficient evidence to take the case to the jury on the issues so joined. There is evidence showing, or tending to show, that at the time deceased received his injury he was engaged in changing a valve in a two-inch water pipe line leading from the main water line to the water tank at the drilling rig located or known as "Little 100 Well No. 7". The evidence is that defendant was obtaining water with which to carry on its drilling operations from an old bed of a river; that it pumped the water from that source to or near the location of the well, through a three-inch water line; that near the location of the well the water line to the tank was reduced to a two-inch line; that in each two-inch line there was a valve which would be closed on each of the two-inch lines, except the line leading to the tank which needed to be filled. It was one of these valves which decedent was changing when he was injured. There was evidence tending to prove that the pipe used by defendant in these water lines was what is known as used, or second-hand, pipe; that the two-inch pipe was rusty and had rough places thereon caused, apparently, by the use of pipe wrenches in handling the pipe in its prior use. There was also some evidence to the effect that rust on pipe such as was here used causes wrenches to slip when turning the same. As to the tools furnished by defendant, there was evidence to the effect that defendant had two sets of tools consisting of hatchets, hammers, wrenches, pipe wrenches of various sizes, known as Stilson wrenches, from 24 to 36 inches in length. The evidence shows that one set of such tools was kept at the pump house for the use of the water pumpers and that the other set of tools was kept at or near the drilling rig. The evidence further shows that deceased may have been using either set of tools. There is no evidence showing which set of tools he was using. The evidence is that the pipe wrenches were used wrenches, and that those kept at or near the drilling rig were worn so that the "jaws" of the wrenches were loose and would not hold well. There was no witness who saw how deceased received the injury, nor any witness who knew just what

he was doing at the time, other than that he was supposed to be changing the value in the two-inch pipe line. Shortly after the injury was received, some ten or fifteen minutes, decedent showed his thumb to one or two of his fellow workmen and stated to them that he had stuck a sliver or splinter in it; that it was his right thumb, and that it was bleeding at the time, and that decedent was acting as if he was trying to get the splinter or sliver out of his thumb. Decedent never did tell any person just how he stuck the splinter in his thumb, or where it came from. There is no evidence whatever tending to prove that the splinter which decedent stuck in his thumb came from any of the wrenches, or other tools which decedent was using, and there was no evidence showing that decedent was, in fact, using any of the tools at the time the injury was received. There is no evidence from which the jury could find, or infer, that decedent's injury was the result of any negligence whatever of defendant insofar as the use of wrenches, or other tools, is concerned. As to the pipe in question, there was evidence to the effect that it is a universal custom everywhere in the oil field work for drillers to use second-hand, or used, pipe in laying its water and gas lines in and about its drilling operations. But assuming that there was evidence from which the jury could have inferred and found that defendant was negligent in the use of used, or second-hand, pipe which had been allowed to become rusty, still there was no competent evidence to prove, or from which the jury could have found or inferred, that the splinter or sliver which stuck in decedent's thumb came from the pipe, or the valve in question. The question of how the injury was received, or the source from which the splinter came, was a matter of pure speculation, or conjecture. Under the evidence as shown by the record the number of causes which could have been responsible for the injury to decedent is limited only by the extent of the imagination.

In Sheridan v. Deep Rock Oil Corporation, 201 Okla. 312, 205 P. 2d 276, it was held:

"Where all of plaintiff's evidence, together with all inferences and conclusions to be reasonably drawn therefrom, is insufficient to point out clearly a causal connection between the alleged negligence of defendant and injury to plaintiff's decedent, the action of the trial court in sustaining a demurrer thereto is proper."

In Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 P. 438, it was held:

"In this jurisdiction a motion for a directed verdict in negligence cases is not favored, but where the evidence for plaintiff is such, after considering all the inferences and conclusions to be reasonably drawn therefrom, that an essential element of liability is wholly lacking, and where a verdict for plaintiff in any amount must necessarily be based on speculation and conjecture as to the essential element of liability not shown by the evidence, it is proper to sustain a motion for a directed verdict for defendant."

Under the rules stated in the above cases and the record in this case, there was no error in directing a verdict for defendant.

Affirmed.

ARNOLD, V. C. J., and WELCH, CORN, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.